CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

JUN 2 3 2023

LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:14-cr-00026 |
| v. ) | |
| ) | |
| LEWIS GRAY NAYLOR, JR., ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on a motion for compassionate release filed by Lewis Gray Naylor, Jr., pursuant to 18 U.S.C. § 3582(c)(1)(A). Mot., ECF No. 541. The government responded to the motion and Naylor filed a reply to the response. ECF Nos. 547, 548. The government also submitted additional authority, ECF No. 574, which has been considered. For the reasons stated herein, the court will **GRANT** Naylor's motion for compassionate release and reduce his sentence to 78 months, to be served consecutively to the 51-month revocation sentence imposed in United States v. Naylor, No. 1:04-cr-00051 (W.D. Va. May 12, 2015), for a total of 129 months.

## I. Background

On June 19, 2014, Naylor and ten codefendants were charged in a superseding indictment with several counts of drug distribution. Naylor was charged with one count of conspiring to possess with intent to distribute and distributing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B), and (b)(1)(C) (Count 1). Superseding Indictment, ECF No. 90. On August 13, 2014, Naylor entered into a plea agreement in which he pled guilty to Count 1 of the

1

superseding indictment. The parties agreed that Naylor would be responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine. Plea Agreement, ECF No. 180 at 1, 3.

Naylor faced a statutory sentencing range of 5 to 40 years. Presentence Investigation Report (PSR), ECF No. 313 ¶ 106; 21 U.S.C. § 841(b)(1)(B). Under the United States Sentencing Guidelines (USSG or guidelines), based on being responsible for more than 500 but less than 1,500 grams of methamphetamine, Naylor had a base offense level of 30. PSR, ECF No. 313 ¶ 42. However, he was found to be a career offender under the guidelines, which gave him an offense level of 34, decreased by 3 levels for acceptance of responsibility, to a total offense level of 31. Id. ¶¶ 43–51. With his designation as a career offender, Naylor's criminal history category was VI. Id. ¶¶ 65–68. His criminal history category combined with his offense level of 34 resulted in a guidelines range of 188 to 235 months. Id. ¶ 107; USSG Ch. 5 Pt. A.

Without the career offender designation, Naylor's base offense level of 30 would have been reduced by 3 levels to 27, and his criminal history category would have been V. PSR, ECF No. 313 ¶¶ 42–50, 67. An offense level of 27 combined with a criminal history category of V results in a guidelines range of 120 to 150 months. USSG Ch. 5 Pt. A.

On March 27, 2015, Naylor was sentenced to a term of 124 months, to be followed by a 4-year term of supervised release. J., ECF No. 311. The court imposed a sentence 35 percent below the low end of the guidelines range following the government's motion for a departure based on substantial assistance. Mot., ECF No. 302; Statement of Reasons, ECF No. 312 at 2. Naylor also is serving a consecutive 51-month sentence following revocation of a period of supervised release which had been assessed in a separate methamphetamine distribution case.

See ECF Nos. 141, 152 in Naylor, No. 1:04-cr-00051. Altogether Naylor is serving a term of 175 months and has a projected release date of June 26, 2026.[1]

Naylor seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(l)(A) because if he were sentenced today, he would have a substantially lower guidelines sentencing range which would likely result in a substantially lower sentence. He contends that this difference in sentences is an "extraordinary and compelling" reason to grant compassionate release.

## II. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Naylor's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Lewis Gray Naylor") (last viewed May 25, 2023).

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Naylor asserts that he submitted his request for compassionate release to the warden of his facility on October 1, 2021, and he received a response on October 4, 2021. ECF No. 541-1. The government does not contest that Naylor has exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court finds that Naylor has satisfied the statute's exhaustion requirements.

The court must next consider whether it should reduce the term of imprisonment. The USSG § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). See U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(A)–(D). This policy statement, while governing only for BOP-filed motions for compassionate release, "remains helpful guidance even when motions are filed by defendants." United States v. McCoy, 981 F.3d 271, 282 n.7 (4th Cir. 2020).

**A. Sentencing Disparity**

Naylor argues that his case presents a sentencing disparity that creates an "extraordinary and compelling" reason to grant compassionate release.

Under USSG §4B1.1, a defendant is designated a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

As set forth above, Naylor was sentenced as a career offender with his drug conspiracy offense serving as the instant offense of conviction. Because the conspiracy offense carried a maximum sentence of 40 years, 21 U.S.C. § 841(b)(1)(B), his classification as a career offender resulted in a base offense level of 34. USSG § 4B1.1(b)(2). His offense level was reduced by 3 points for acceptance of responsibility, leaving him with a total offense level of 31. His offense level of 31, coupled with his criminal history category of VI, resulted in a sentencing range of 188 to 235 months. USSG Ch. 5 Pt. A.

However, under United States v. Norman, 935 F.3d 232 (4th Cir. 2013), decided after Naylor was sentenced, convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The Fourth Circuit reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Id. at 236–38. Accordingly, if sentenced today, Naylor's conspiracy offense would not be considered a controlled substance offense and therefore would not satisfy the requirements of USSG §4B1.1(2).

5

Naylor also argues that neither of the other convictions identified in the PSR as supporting the career offender designation, i.e., eluding police and conspiracy to manufacture methamphetamine, would support the designation today. PSR, ECF No. 313 ¶ 48, 63, 64. The court agrees that conspiracy to manufacture methamphetamine is no longer considered a predicate offense after Norman because, as discussed above, convictions for conspiracy to distribute drugs are considered too broad to fit the definition under USSG § 4B1.2.

Regarding Naylor's previous conviction for eluding police, at the time Naylor was sentenced, "eluding police" was considered a "crime of violence" under USSG § 4B1.2 (effective Nov. 1, 2013). The guideline has since been amended, and Naylor argues that "eluding police" no longer would be considered a "crime of violence" under the guideline. The government did not respond to this argument, asserting that because Norman is dispositive as to whether Naylor would now be a career offender, there was no need to analyze his claim under Johnson. Resp., ECF No. 547 at 5 n.2. The court agrees that after Norman, neither of Naylor's convictions for conspiracy to distribute drugs qualifies as a predicate offense under the career offender guideline, and that if Naylor were sentenced today, he would not qualify as a career offender. Therefore, the court does not find it necessary to address Naylor's argument that "eluding police" is no longer a crime of violence.

Without the career offender designation, Naylor's total offense level would be 27 and his criminal history category would be VI, resulting in a guidelines sentencing range of 120 to 150 months. If he received the same 35 percent reduction for substantial assistance that he received in 2014, his sentence today would be 78 months. He argues that the disparity between the 124-month sentence he received and the 78-month sentence he would likely receive today is an extraordinary and compelling reason that warrants a sentence reduction.

In McCoy, 981 F.3d at 285–86, the Fourth Circuit found that a "gross disparity" between a petitioner's sentence at the time of conviction and the sentence that could be imposed under current law can be considered an "extraordinary and compelling reason" for granting compassionate release. The McCoy court examined the changes to 18 U.S.C. § 924(c) brought about by the First Step Act. Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." McCoy, 981 F.3d at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020).

The McCoy court acknowledged that the change to § 924(c) does not apply retroactively to sentences imposed before December 21, 2018. Id. at 275. But the court distilled two features of stacked § 924(c) sentences that led to finding that the defendants met the "extraordinary and compelling reasons" standard: (1) "the sheer and unusual length of the sentences," and (2) the "'gross disparity' between those sentences and the sentences Congress now believes to be an

appropriate penalty for the defendants' conduct." Id. at 285. The court concluded that the district courts' consideration of "the First Step Act's declaration of the appropriate level of punishment under § 924(c)" to be proper "in assessing the defendants' cases, on an individualized basis, for compassionate release." Id. at 275.

Following McCoy, courts, including this one, have applied McCoy's reasoning to motions for compassionate release seeking a reduced sentence based on the claim that the defendant received what would be an invalid career offender designation under Norman if sentenced today. See, e.g., United States v. Gilmer, No. 5:00-cr-30053, 2022 WL 1423615 (W.D. Va. May 5, 2022); United States v. Cooper, No. 1:10CR00043-001, 2022 WL 1302708 (W.D. Va. May 2, 2022); United States v. Morris, No. 4:13cr25, 2022 WL 1285183 (E.D. Va. Apr. 29, 2022); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021); United States v. Fennell, 570 F.Supp.3d 357 (W.D. Va. 2021); United States v. Richards, No. 3:11-cr-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021); and United States v. Trice, No. 7:13-CR-34-1001, 2021 WL 402462 (W.D. Va. Feb. 3, 2021).

Naylor asserts that the 46-month difference between the 124-month sentence he received in 2015 and the 78-month sentence he would likely receive today is a gross disparity and constitutes an extraordinary and compelling reason to reduce his sentence. The government offers several arguments in response. First, the government argues that McCoy was wrongly decided and that nonretroactive statutory changes to sentencing laws should not form the basis for compassionate release. However, McCoy continues to be the law in the Fourth Circuit. See, e.g., United States v. Gutierrez, No. 21-7092, 2023 WL 245001, at *2 n.1 (4th Cir. Jan. 18, 2023) (reiterating holding in McCoy that there are no applicable Sentencing Commission policy statements in compassionate release petitions filed by parties other than the BOP); United States

v. Hargrove, 30 F.4th 189, 194–95 (4th Cir. 2022) (same); and United States v. Davis, No. 21-6960, 2022 WL 127900 (4th Cir. Jan. 13, 2022) (per curiam) (citing McCoy and its holding that when a defendant, rather than the BOP, files a motion for compassionate release, the court may consider any extraordinary and compelling reason for release that a defendant might raise). Therefore, the court will follow the holding in McCoy that a gross disparity in sentencing can warrant compassionate release.

The government also argues that a defendant must raise a sentencing challenge in a 28 U.S.C. § 2255 petition and not in a motion for compassionate release. The government is correct that a defendant cannot challenge the validity of his conviction or sentence through a compassionate release motion. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022). Rather, "28 U.S.C. § 2255 is '[t]he exclusive remedy' for challenging a federal conviction or sentence after the conclusion of the period for direct appeal, 'unless [§ 2255] is inadequate or ineffective,' in which case the defendant may file a 28 U.S.C. § 2241 petition for habeas corpus pursuant to the savings clause at § 2255(e).'" Id.

However, Naylor is not challenging the validity of his original conviction or sentence. Instead, he is arguing that a change in case law means that if he were sentenced for the same conduct today as he was in 2015, he would not be a career offender and his guideline sentencing range would be reduced. This is the same type of argument the defendants made in McCoy. "The defendants in McCoy argued that a change in the sentencing law that occurred after their sentencings (but did not apply retroactively) merited a reduction in their sentences to conform to that change." Id. (citing McCoy, 981 F.3d at 275). Because Naylor is not challenging his original conviction and sentence, his motion for compassionate release is not barred by the holding in Ferguson. See United States v. Jackson, No. 7:16CR00033-002, 2023 WL 3480900, at

9

\*2 (W.D. Va. May 16, 2023) (Jones, J.) ("Although a defendant cannot challenge the validity of his original conviction or sentence through a compassionate release motion, Ferguson, 55 F.4th at 272, I may consider intervening changes in the law along with sentencing disparities caused by such changes in exercising my discretion in assessing whether extraordinary and compelling circumstances exist."); United States v. Brice, No. SAG-07-0261, 2023 WL 2035959, at \*2 (D. Md. Feb. 16, 2023) (rejecting government's argument that Ferguson barred a compassionate release claim where the defendant asserted that post-sentencing changes in law satisfied the "extraordinary and compelling" standards); United States v. Hernandez, No. 5:15-cr-00033, 2022 WL 17905070, at \*3 n.1 (S.D.W.V. Dec. 22, 2022) (finding defendant's challenge to career offender enhancement was properly considered in a motion for compassionate release because it did not constitute a collateral attack on his sentence).

In addition, the government argues that the disparity between the sentence Naylor received in 2015 and the sentence he would receive for the same conduct today is not an extraordinary and compelling reason to reduce his sentence. The government points out that McCoy involved additional decades of sentencing time imposed on defendants who were young first-time offenders, whereas the difference between the sentence Naylor received in 2014 and the sentence he would receive today is not decades, but 78 months.

Although the disparity at issue in Naylor's case is not as great as that contemplated in McCoy, this court and others have found that sentencing disparities may present extraordinary and compelling circumstances even when they are not decades long. See, e.g., Cooper, 2022 WL 1302708, at \*2 (finding sentencing disparity possibly as long as 5 years was an extraordinary and compelling reason for granting compassionate release); Williams, 2021 WL 5827327, at \*7 (finding sentencing disparity of 43 months was an extraordinary and compelling reason to grant

10

compassionate release); United States v. Shaw, No. 5:15-cr-00025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (finding that a sentencing disparity of 22 months was an extraordinary and compelling reason to grant a sentence reduction).

In light of the Fourth Circuit's decision in Norman, it is undisputed that if Naylor were sentenced today, he would not be considered a career offender under the guidelines and his sentencing range would be 120 to 150 months, decreased to 78 months if he received the same 35 percent reduction for substantial assistance. The court finds that the significant disparity between Naylor's current sentence and the sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

### C. 18 U.S.C. § 3553(a) Factors

Having found that Naylor has demonstrated an "extraordinary and compelling reason" to warrant a sentence reduction under § 3582(c)(1)(A), the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (internal quotations omitted). The relevant factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

11

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering the applicable factors, the court concludes that they weigh in favor of a sentence reduction. Beginning with the nature and circumstances of Naylor's offense, Naylor participated in a large conspiracy that distributed great quantities of methamphetamine, although he joined the conspiracy approximately two years after it began and was arrested a few months later. Naylor stipulated to distributing between 500 and 1,500 kilograms of methamphetamine during this period. PSR, ECF No. 313 ¶¶ 14, 28, 29, 36. Naylor told law enforcement officers that he was addicted to methamphetamine and managed to abstain from using the drug from his release from prison in early 2013 until he started using the drug again in May 2013. He started selling the drug in June 2013 to support his own habit and to buy food for himself. Id. ¶ 40. While Naylor undoubtedly contributed to the misery caused by

12

methamphetamine addiction in the community, he also is an addict who sold to support his own habit. The court concludes that the nature and circumstances of Naylor's offense are neutral with regard to a sentence reduction.

Turning to the history and characteristics of the defendant, Naylor has a long history of criminal convictions beginning at a young age and continuing into his adult life, including two convictions for breaking and entering, one conviction for grand larceny for stealing a car, multiple convictions for driving under the influence and reckless driving, a conviction for eluding police, convictions for selling marijuana and methamphetamine, and a conviction for conspiracy to manufacture methamphetamine for which he was sentenced to a 10-year term prior to the instant offense. Id. ¶¶ 54–64. Naylor reported that he began drinking alcohol and smoking marijuana when he was 17 and used both continuously except when incarcerated. He first used methamphetamine when he was 19 and used continuously except when incarcerated or during short periods of sobriety. He also started abusing Xanax when he was 19 and continued to abuse it anytime he could obtain it. He reported never having received substance abuse treatment but was amenable to receiving treatment. Id. ¶¶ 92–97.

Since being incarcerated in the federal system, Naylor reports one disciplinary infraction for possessing tobacco, which occurred during his first term of incarceration. He has taken several classes and has participated in mock job fairs and reentry and support services. Inmate Education Data, ECF No. 541-2. Naylor's criminal history appears to be driven by his addiction and he has never been accused of engaging in violence or using a firearm. Taking all facts into consideration, including Naylor's very limited disciplinary record while incarcerated, the court finds that Naylor's history and characteristics support a reduction in his sentence.

The second relevant factor stresses the need for the sentence imposed to serve the purposes of punishment enumerated under § 3553(a)(2), i.e., to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The court finds that given Naylor's institutional history, a reduced sentence would be sufficient to achieve the goals of punishment and reflect the seriousness of the offense and promote respect for the law, and that a longer sentence is not necessary to provide him with additional education or training. Accordingly, the court concludes that this factor weighs in favor of a sentence reduction.

Looking to the kinds of sentences available and the applicable guidelines range, as discussed above, Naylor's guidelines range would be 120 to 150 months, and if he received a 35 percent reduction for his substantial assistance, he would be sentenced to a term of 78 months. This factor weighs in favor of a reduction in his sentence. The remaining § 3553(a) factors weigh neither in favor nor against a sentence reduction.

After considering the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Naylor's case. Given the circumstances of the offense, including Naylor's history and characteristics, and the changes in the understanding of the career offender guideline, the court concludes that a sentence of 78 months, served consecutively to the 51-months sentence on the revocation, for a total of 129 months, is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Naylor's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

For the reasons stated herein, the court will **GRANT** Naylor's motion for compassionate release, ECF No. 541, and **REDUCE** his sentence to 78 months, served consecutively to his revocation sentence of 51 months, for a total sentence of 129 months, to be followed by a 4-year term of supervised release. The clerk is directed to send a copy of this order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: June 23, 2023

*/s/ Michael F. Urbanski/*

Michael F. Urbanski
Chief United States District Judge